IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-03260-CNS

OSCAR ANTONIO ARTOLA ARAUZ,

    Petitioner,

v.

JUAN BALTAZAR, in his official capacity as warden of the Aurora Contract Detention Facility;
ROBERT GUARDIAN, in his official capacity as Field Office Director, Denver, U.S. Immigration and Customs Enforcement,
KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security;
TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; and
PAMELA BONDI, in her official capacity as Attorney General of the United States,

    Respondents.

## ORDER

Before the Court is Petitioner Oscar Artola Arauz's Petition for Writ of Habeas Corpus, ECF No. 1, and Petitioner's Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 3. As the briefing demonstrates that Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing regarding Petitioner's challenge, *see* 28 U.S.C. § 2243, and, for the reasons outlined below, the Court GRANTS the petition. Because Petitioner's motion seeks relief on substantially similar grounds, the Court DENIES as moot the motion. In doing so, the Court presumes familiarity with the parties' briefing. *See* ECF Nos. 1, 3, 13, 14.

1

## I.   BACKGROUND

This case presents a now familiar factual background and legal posture. Petitioner is a native of Nicaragua and arrived in the United States when he was nine years old. ECF No. 3-1 ¶¶ 2, 3. He has lived in the United States for nearly 40 years. *Id.* Prior to his detention, Petitioner lived in Florida, where he works in construction. *Id.* ¶¶ 6, 8. Most of Petitioner's relatives also live in Florida, *id.* ¶ 6, including his mother, who he helps support because she is in poor health, *id.* ¶ 9.

Petitioner was taken into custody by Immigration and Customs Enforcement (ICE) on June 12, 2025 and was detained pursuant to 8 U.S.C. § 1226. ECF No. 13-1 ¶¶ 13–14. ICE subsequently cancelled Petitioner's detention under § 1226 and now detains him pursuant to 8 U.S.C. § 1225(b), *id.* ¶ 14, which provides for mandatory detention. ICE subsequently issued a Notice to Appear (NTA), charging Petitioner with being inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* ¶ 20. ICE issued a warrant for Petitioner's arrest and initiated removal proceedings against him. *Id.* ¶ 21.

On June 22, 2025, Petitioner was transferred to the Aurora Contract Detention Facility (CDF) in Aurora, Colorado, where he is currently detained. *Id.* ¶¶ 3, 15. Since arriving at the Aurora CDF, Petitioner has faced serious health issues, which Respondents do not dispute. *See* ECF No. 3-1 ¶¶ 13–20; ECF No. 13 at 6. In July, after Petitioner complained of chest pains and heart problems, the medical staff at Aurora CDF transported Petitioner to an outside hospital for emergency medical care where he was diagnosed with heart failure. *See* ECF No. 3-1 ¶¶ 13–20; ECF No. 13 at 6 (acknowledging

that "Petitioner was diagnosed with heart failure" in July); ECF No. 13-1 ¶ 17 (stating that, in July, "Petitioner's medical condition required emergency attention," necessitating his "immediate[] transport[] to UC Health University of Colorado Hospital). After spending 10 days in the hospital, Petitioner was released and prescribed multiple medications to address his diagnosis, *see* ECF No. 3-1 ¶ 17, some of which are unavailable at the immigration detention facility, *see, e.g.*, ECF No. 14-2 at 3. Petitioner is also under doctor's orders to monitor his weight, physical activity, diet, sleep, water, and medication intake. ECF No. 3-1 ¶¶ 20–27. Follow-up medical appointments were ordered to ensure Petitioner's medications are working properly and so that he can be seen by a cardiologist. *Id.* ¶¶ 17–20.[1] Despite repeatedly raising his health concerns to the medical personnel at the Aurora CDF and requesting access to an outside doctor over the intervening months, Respondents failed to timely transport Petitioner to either appointment. *Id.* ¶¶ 19, 20.

Petitioner was not seen by a medical professional outside the Aurora CDF until October 21, 2025, when a doctor at the Aurora CDF reviewed Petitioner's ECG and immediately called an ambulance because the doctor "did not like what he saw." ECF No. 14-2 ¶¶ 3–4. In support of Petitioner's request for relief, an independent medical doctor, Dr. Parveen Parmar, reviewed Petitioner's medical file and concluded that Petitioner has "severe heart failure and a high likelihood of significant morbidity and/or mortality in the

---

[1] Specifically, Petitioner states that he was supposed to have at least two additional medical appointments following his discharge from the hospital in July 2025, including: (1) a follow-up appointment at the hospital by mid-September (60 days after he was discharged) to ensure his medications are working properly; and (2) an appointment to see a cardiologist in early October. *See* ECF No. 3-1 ¶¶ 18–20. Petitioner states, and Respondents do not dispute, that Respondents failed to bring Petitioner to either appointment. *See id.*

next year, even with optimal medical management." ECF No. 14-1 at 4. Dr. Parmar characterizes Petitioner's diagnosis as a "severe, life threatening, chronic condition." *Id.*

While in detention, Petitioner appeared before an immigration judge (IJ) for a custody redetermination hearing. ECF No. 13-1 ¶ 28. At the hearing, the IJ denied Petitioner request for a change in custody, finding that she did not have jurisdiction to consider Petitioner's request. *Id.* Petitioner, like many others in his position, is seeking habeas relief and requesting that the Court either immediately release him or order Respondents to provide him with a bond hearing withing seven days. ECF No. 1 ¶ 9.

## II.  LEGAL STANDARD

As a general matter, district courts have authority to grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.  ANALYSIS

As noted above, the issues presented in this case have been recently litigated in many other cases arising from similar circumstances. These cases concern noncitizens, like Petitioner, who have been present in the United States for many years and who are being held in immigration-related detention and denied bond hearings following the government's recent reinterpretation of 8 U.S.C. §§ 1225, 1226 of the Immigration and Nationality Act (INA). Respondents' arguments here similarly echo nearly identical arguments rejected by courts across the country and in this judicial district, including this

Court. *Compare* ECF Nos. 1, 3, 13, 14 *and e.g.*, *Nava Hernandez v. Baltazar, et al.*, No. 1:25-CV-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); *Hernandez Vazquez v. Baltasar, et al.*, No. 1:25-cv-3049-GPG, ECF No. 22 (D. Colo. Oct. 23, 2025); *Loa Caballero v. Baltazar, et al.*, No. 1:25-cv-3120-NYW, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); *Moya Pineda v. Baltasar, et al.*, No. 1:25-cv-2955-GPG, ECF No. 21 (D. Colo. Oct. 20, 2025); *Mendoza Gutierrez v. Baltasar, et al.*, 2025 WL 2962908, No. 1:25-cv-2720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-CV-326-LM-AJ, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Romero v. Hyde*, Civil Action No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), --- F.Supp.3d ----, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025). As in other cases, Respondents here argue that (1) the Court lacks jurisdiction to hear Petitioner's challenge to his mandatory detention; and (2) even if the Court finds that it has jurisdiction, it should reject Petitioner's challenge and find that Petitioner is properly detained under § 1225(b)(2)(A)'s mandatory detention provision as an "applicant for admission" to the United States. ECF No. 13 at 2. Unsurprisingly, Respondents have once again failed to persuade.

As an initial matter, the Court finds no merit in Respondents' argument that § 1252(a)(5) and § 1252(b)(9) bar the Court's consideration of Petitioner's claims, *see* ECF No. 13 at 7–8. This Court has recently rejected similar arguments, and Respondents present no unique or compelling rationale explaining why such jurisdictional bars would

apply now. *See, e.g.*, *Nava Hernandez*, 2025 WL 2996643, at *2; *Garcia Cortes*, 2025 WL 2652880, at *2. Accordingly, the Court finds that its recent analysis of § 1252(a)(5) and § 1252(b)(9) in *Nava-Hernandez* applies equally here, and the Court adopts this reasoning entirely. *See* 2025 WL 2996643, at *2. Both § 1252(a)(5) and § 1252(b)(9) serve as jurisdictional bars limiting a district court's ability to review final orders of removal. *See* 8 U.S.C. § 1252(a)(5) (requiring that "a petition for review" of an "order of removal" be filed "with an appropriate court of appeals"); 8 U.S.C. § 1252(b)(9) (limiting judicial review to "a final order" of "any action taken or proceeding brought to remove a [noncitizen]"). But like in *Nava Hernandez*, Petitioner here is not subject to a final order of removal, and Respondents do not argue otherwise. *See Nava Hernandez*, 2025 WL 2996643, at *2. Similarly unavailing is Respondents' argument that such jurisdictional bars apply even without a final order of removal because Petitioner's claims "aris[e] from his removal proceedings," ECF No. 13 at 7. This Court has also previously rejected such arguments. *See Garcia Cortes*, 2025 WL 2652880, at *2 (determining that no jurisdictional bar applies because claims challenging the basis of an immigration detainee's mandatory detention "are legal in nature and challenge specific conduct unrelated to removal proceedings"); *Nava Hernandez*, 2025 WL 2996643, at *2 (same). Accordingly, Respondents' jurisdictional arguments fail.

The Court is likewise unpersuaded by Respondents' argument on the merits that Petitioner is properly subject to mandatory detention under § 1225(b)(2)(A), as opposed to the discretionary detention provision in § 1226(a). *See* ECF No. 13 at 9–18. As this Court has found previously, the plain text of § 1225 and § 1226, the legislative history of

the INA, and past applications of the statutes all support a finding that Petitioner, who has lived in the United States for nearly 40 years and who was not detained while attempting to enter the country, is not subject to § 1225(b)(2)(A)'s mandatory detention provisions.[2] *See Nava Hernandez*, 2025 WL 2996643, at *4–7; *Garcia Cortes*, 2025 WL 2652880, at *2–3. Other courts in this district and across the nation also agree that § 1226(a) should apply in such circumstances. *See e.g.*, *Loa Caballero*, 2025 WL 2977650, at *7 (determining that petitioner, who "has been present in the United States since approximately 2006" and "was not seeking lawful entry into the United States at the time he was detained [because] he was already here," was "not subject to § 1225(b)(2)(A)'s mandatory detention provision"); *Mendoza Gutierrez*, 2025 WL 2962908, at *6 ("a proper understanding of the relevant statutes, in light of their plain text, overall structure, and uniform case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [petitioner], who has been residing in the United States for more than two years") (citing *Lopez Benitez*, 2025 WL 2371588, at *3); *Corona Diaz v. Olson, et al.*, No. 25 CV 12141, 2025 WL 3022170, at *6 (N.D. Ill. Oct. 29, 2025) (determining that petitioner "is not subject to mandatory detention under § 1225(b)(2)(A) and is instead subject to the discretionary detention provisions of § 1226(a)" because there is "no evidence" that petitioner, who "has been in the United States for over twenty-five years, . . . was seeking admission to the United States"); *Martinez-Elvir v. Olson*, No. 3:25-CV-589-CHB, 2025 WL 3006772,

---

[2] Although the INA provides for the mandatory detention of noncitizens already present in the United States in certain circumstances, Respondents do not invoke those provisions here and instead only argue that Petitioner's detention subject to § 1225(b)(2)(A) is proper because he is an "applicant for admission" to the United States. *See* ECF No. 13 at 9–18.

7

at *7 (W.D. Ky. Oct. 27, 2025) (determining that petitioner is not subject to § 1225's mandatory detention provisions because petitioner "has lived in the United States for over twelve years, has never sought admission to the country, and was arrested in front of his home in Chicago—not while attempting to illegally cross the border or pass through a port of entry"); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) ("[T]he plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States.").

Moreover, the record reveals that Respondents' current arguments are at odds with Respondents' own stated basis for detaining Petitioner in the first instance. ICE initially detained Petitioner under § 1226—the same detention authority that Petitioner requests Respondents utilize now and which provides for discretionary detention. *See* ECF No. 13-1 ¶ 14. ICE subsequently cancelled Petitioner's detention under § 1226 and, by the time Petitioner's removal proceedings were initiated on August 5, 2025, Respondents' new policy—requiring that all noncitizens who arrived in the United States without inspection be subject to mandatory detention under § 1225(b)—was in place. *See id.*; ECF No. 1 ¶ 3. Although Respondents provide no explanation for this change, the Court notes that this timeline is not unlike similar cases where courts have found that Respondents' decision to detain a noncitizen pursuant § 1225(b)(2)(A) despite the initial application of § 1226 to be an "impermissible post hoc rationalization." *Martinez-Elvir*, 2025 WL 3006772, at *9 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,

8

591 U.S. 1, 22 (2020)); *see also, e.g.*, *Lopez-Campos*, 2025 WL 2496379, at *7 (rejecting Respondents' "new position . . . adopted post-hac" that petitioner was properly subject to § 1225(b)(2)(A)'s mandatory detention, where petitioner was initially detained pursuant to § 1226 and where it "was not until [petitioner] requested a custody redetermination hearing (bond hearing) that Respondents claimed his detention was under Section 1225(b)(2)(A)"); *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) ("The Court will not credit [Respondents'] post-hoc justification in the face of clear evidence that Barrera was detained pursuant Section 1226.").

Simply put, because Petitioner has lived in the United States for nearly 40 years and was not detained while attempting to enter the country, he is improperly subject to mandatory detention under § 1225(b)(2)(A) and should instead be detained under § 1226(a), consistent with Respondents' initial determination and the plain text, legislative history, and past practices of the statutes at issue. Accordingly, the Court will grant Petitioner relief on his first claim and orders that Respondents provide Petitioner with a bond hearing pursuant to § 1226(a) no later than November 7, 2025, at which time the government will bear the burden of proving that Petitioner is flight risk or a danger to the community such that his continued detention is justified.[3] Because the Court's ruling will

---

[3] Petitioner requests that the Court order that Respondents bear the burden of proving that Petitioner is a flight risk or a danger to the community by clear and convincing evidence. ECF No. 1 ¶¶ 72, 73. Respondents note that courts in this district are split on which party bears the burden of justifying a noncitizen's continued detention at a bond hearing but argue that the burden should be on Petitioner in this instance. *See* ECF No. 13 at 21–22. The Court disagrees and instead follows the recent rulings in this judicial district confirming that this is the government's burden. *See, e.g.*, *Hernandez Vazquez*, No. 25-cv-3049, ECF No. 22 at 4 (granting petitioner's request for "a bond hearing at which Respondents bear the burden of proof of showing his continued detention is proper and was proper at the time of his arrest"); *Loa Caballero*, 2025 WL 2977650, at *9 ( "Respondents bear the burden of justifying detention" at petitioner's bond hearing); *Moya Pineda*, No. 25-cv-2955, ECF No. 21 at 4 ("Respondents bear the burden of proof of showing [petitioner's] continued detention is proper"); *Mendoza Gutierrez*, 2025 WL 2962908, at *10

afford Petitioner the relief he seeks, the Court need not address Petitioner's remaining arguments at this time. *See Loa Caballero*, 2025 WL 2977650, at *8 (declining to rule on petitioner's remaining claims after granting petitioner all relief sought under § 1226(a)); *Guerrero Orellana v. Moniz*, --- F. Supp. 3d ----, 2025 WL 2809996, at *3 (D. Mass. Oct. 3, 2025) (declining to address petitioner's due process and APA arguments after finding in petitioner's favor on statutory claim).

## IV.   CONCLUSION

For the reasons discussed above, the Court GRANTS Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1. Respondents are ordered to either (1) provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within SEVEN DAYS (on or before November 7, 2025), at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence of dangerousness or flight risk; or (2) in the alternative, immediately release Petitioner from custody under reasonable conditions of supervision. Respondents are also ordered to file a status report within TEN DAYS of this order to certify compliance. The status report shall state if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial. As Petitioner's Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 3, is brought on substantially similar grounds as the habeas petition, the Court DENIES the motion as moot.

---

(ordering that Petitioner "shall be immediately released from detention until he receives a bond hearing . . . at which the Government shall bear the burden of justifying by clear and convincing evidence of dangerousness or flight risk").

DATED this 31st day of October 2025.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge